[Civ. No. 42575. Second Dist., Div. Two. Sept. 20, 1974.]

RANDALL G. WEISSBUCH, Plaintiff and Appellant, v.
BOARD OF MEDICAL EXAMINERS, Defendant and Appellant.

**COUNSEL**

Ball, Hunt, Hart, Brown & Baerwitz, James C. Maupin and Laurence F. Jay for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Earl R. Plowman and Mark A. Levin, Deputy Attorneys General, for Defendant and Appellant.

## OPINION

**COMPTON, J.**—Petitioner Randall G. Weissbuch was licensed to practice medicine in California in 1968. On January 15, 1971, petitioner pleaded guilty to possession of marijuana in violation of Health and Safety Code section 11530 (now Health & Saf. Code, § 11357). He was given a suspended misdemeanor sentence and was placed on probation.

In July of 1971 disciplinary proceedings were commenced before the State Board of Medical Examiners (Board). At the hearing it was stipulated that the petitioner had suffered the above referenced conviction. It was further stipulated that during the period January 1, 1970, to and including September 1970 petitioner had used marijuana. Petitioner testified that his use of marijuana was as an escape from feelings of depression and inadequacy and that he used the substance only at night. He admitted that his judgment was impaired during the times of such use. At the time of his arrest, petitioner was in possession of nine ounces of marijuana.

The Board made findings of fact consistent with the stipulated facts and further found that "the episode had no effect on his medical ability of [sic] his patients' well-being." Pursuant to the findings the Board determined that petitioner was guilty of unprofessional conduct as defined in Business and Professions Code sections 2384[1] and 2390.[2] Petitioner's license was

---

[1]Section 2384 reads as follows: "The conviction of or cash compromise of a charge of violation of the Harrison Act regulating narcotics, or the conviction of a violation of the statutes of this State, regulating narcotics, or dangerous drugs, constitutes unprofessional conduct within the meaning of this chapter. The record of the conviction or compromise is conclusive evidence of such unprofessional conduct. A plea or verdict of guilty or a conviction following a plea of nolo contendere is deemed to be a conviction within the meaning of this section. The board may order the license suspended or revoked, or may decline to issue a license, when the time for appeal has elapsed, or the judgment of conviction has been affirmed on appeal or when an order granting probation is made suspending the imposition of sentence, irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code allowing such person to withdraw his plea of guilty and to enter a plea of not guilty, or setting aside the verdict of guilty, or dismissing the accusation, information or indictment."

[2]Section 2390 reads as follows: "The use or prescribing for or administering to himself, of any of the narcotics specified in Sections 11001 or 11002 of the Health and Safety Code; or the use of any of the dangerous drugs specified in Section 4211 of this code, or of alcoholic beverages to the extent, or in such manner as to be

ordered revoked but execution of the order was stayed during a two-year period of probation. This order was filed July 26, 1972.

Petitioner sought a writ of mandate in the superior court pursuant to Code of Civil Procedure section 1094.5. That court found that the charges against petitioner did not relate to his professional conduct. In pertinent conclusions of law the superior court declared: "1. The charges against Petitioner do not render him unfit to practice his profession. 2. The revocation of Petitioner's license herein constituted a taking of property without due process of law notwithstanding that petitioner's conduct comes within the ambit of Business and Professions Code, sections 2384 and 2390. 3. Respondent committed an abuse of discretion, within the meaning of Civil Procedure Code § 1094.5(b), in revoking petitioner's license."

The trial court's concurrent judgment: ". . . [remanded] the proceedings to [Board] and [commanded] [Board] to set aside its decision dated July 26, 1972, in the administrative proceedings entitled 'In the Matter of the Accusation Against Randall G. Weissbuch, M.D.' and to proceed in a manner consistent with these findings and conclusions."

Both sides appeal. The petitioner apparently feels that the trial court's judgment though favorable to him, impliedly recognizes that conduct unrelated to professional ability can be grounds for discipline.

Petitioner asserts that sections 2384 and 2390 which embrace the charged violation were implicitly intended by the Legislature to include and that the cases hold they do include only those violations which impair his fitness to practice medicine or inherently include moral turpitude, corruption or dishonesty. Further, that when any misconduct charged is private and unrelated to the duties and responsibilities embraced within the ambit of his license, the misconduct charged and proved must per se affect his fitness or involve moral turpitude, corruption or dishonesty. (*Yakov* v. *Board of Medical Examiners*, 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553]; *Morrison* v. *State Board of Education*, 1 Cal.3d 214 [82 Cal.Rptr. 175, 461 P.2d 375]; *In re Higbie*, 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97]; *Vielehr* v. *State Personnel Bd.*, 32 Cal.App.3d 187 [107 Cal.Rptr. 852]; *Comings* v. *State Bd. of Education*, 23 Cal.App.3d 94 [100 Cal.

---

dangerous or injurious to a person holding a certificate under this chapter, or to any other person or to the public, or to the extent that such use impairs the ability of such person so holding such a certificate to conduct with safety to the public the practice authorized by such certificate or the conviction of more than one misdemeanor or any felony involving the use, consumption or self-administration of any of the substances referred to in this section or any combination thereof, constitutes unprofessional conduct within the meaning of this chapter."

Rptr. 73, 47 A.L.R.3d 742]; and *Grannis* v. *Board of Medical Examiners,* 19 Cal.App.3d 551 [96 Cal.Rptr. 863].)

At issue is whether the Legislature may constitutionally provide for the disciplining of a licentiate in the medical profession on the basis of conduct involving the personal use of narcotics or on the basis of a violation of the laws regulating narcotics without any showing that the conduct affected the doctor's professional ability or amounted to moral turpitude. If the answer to that question is in the affirmative, then this case raises the additional issue of whether the particular circumstances of this case fall within the legislative proscription.

At the time of petitioner's use and at the time of his conviction for possessing it, marijuana was classified as a narcotic by Health and Safety Code section 11001. Business and Professions Code section 2390 provides that the personal use of narcotics as defined in Health and Safety Code sections 11001 and 11002 without prescription or the prescribing of such narcotics for himself by a doctor constitutes unprofessional conduct. Business and Professions Code section 2384 provides that a conviction for violation of the laws regulating narcotics and dangerous drugs is in itself professional misconduct.

We must presume that the Legislature in enacting these provisions did not intend to require the additional showing that the doctor's professional ability was impaired since it did provide in section 2390 that insofar as the use of dangerous drugs or alcohol are concerned such impairment is required as a basis for discipline.

In *Collins* v. *Board of Medical Examiners,* 29 Cal.App.3d 439 [105 Cal.Rptr. 634], it was clearly decided that a charge of unprofessional conduct under Business and Professions Code section 2384 was established by a conviction for violating the laws regulating narcotics and dangerous drugs and the Board was not required to establish that such conviction amounted to "moral turpitude."

The State of California has enacted an elaborate scheme for the regulation and control of narcotics and dangerous drugs. The medical doctor is an integral part of this control and in fact is the key to its successful operation. The doctor in the scheme of things literally has the "keys to the safe" and thus occupies a unique position in our society. It is the recognition of this fact that obviously led the Legislature to deny to the doctor the right to prescribe narcotics for himself or to enjoy the unlimited freedom of personal use.

It thus follows that a legislative classification which, insofar as in-

volvement with narcotics is concerned, sets doctors apart from other licensed professionals, is immune against a claim of denial of equal protection of the laws. The prohibitions of the equal protection clause go no further than invidious discrimination. (*Williamson* v. *Lee Optical Co.*, 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461]; *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61 [55 L.Ed. 369, 31 S.Ct. 337].)

In his dealing with narcotics and dangerous drugs, there is more to be considered than just the doctor's ability to perform the skills required of his profession. He is, as we have said, a part of the regulatory machinery. Thus, the line of cases exemplified by *Morrison* v. *State, supra,* and the other cases relied upon by petitioner are not applicable here.

■ The Legislature which presumptively legislated in a constitutional fashion (*McDonald* v. *Board of Election,* 394 U.S. 802 [22 L.Ed.2d 739, 89 S.Ct. 1404]), has determined that conviction of a doctor for a violation of the laws regulating narcotics and dangerous drugs or a doctor's personal non-prescribed use of such substances evidences a sufficient danger to the public that sanctions should be imposed regardless of the availability of evidence that such conduct in fact impaired the doctor's professional skill.

There is no basis, constitutional or otherwise, for the courts to override that legislative determination by imposing a special requirement of "nexus" between the proscribed conduct and professional conduct. (Cf. *Wilson* v. *State Personnel Bd.,* 39 Cal.App.3d 218 [114 Cal.Rptr. 134].)

We think it safe to say that had Dr. Weissbuch's activities involved morphine or some narcotic other than marijuana, no serious attack would have been made on the legislative prerogative. It is only the current controversy and increasing public tolerance of marijuana which makes this case troublesome.

■ Under present law, this case would not have arisen. In 1972, the Legislature by enactment of the California Uniform Controlled Substances Act, eliminated marijuana as a narcotic from Health and Safety Code section 11001 and its successor section 11019 does not include marijuana as a narcotic, nor is it classified as a dangerous drug.

Since this mitigating amendment was enacted prior to the Board's decision becoming final (review by mandamus was pending at the time the amendment became effective), petitioner is entitled to the benefit thereof under the principle of *In re Estrada,* 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948].

The judgment is reversed and the matter is remanded to the trial court with instructions to issue a peremptory writ mandating Board to dismiss

the proceeding and to vacate, annul and expunge its decision. Each party to bear his own costs.

Fleming, J., concurred.

**ROTH, P. J.,** Concurring.—The majority reverses by applying the principle of *In re Estrada,* 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948], to the enactment in 1972 of the California Uniform Controlled Substances Act which eliminated marijuana as a narcotic from Health & Safety Code section 11001 and failed to include marijuana as a narcotic in its successor section 11019.

Resting the judgment on that ground is a concession that the decision of Board of Medical Examiners (Board) at the time it was pronounced was lawful. The primary thrust of petitioner's argument in the trial court and before us, however, is rejected. Petitioner has asserted from the beginning that a literal interpretation of section 2384, Business and Professions Code,* achieves the curious paradox of authorizing Board to revoke the license or otherwise discipline a doctor, even though Board's findings, fortified by those of a trial court, show no misconduct equating with unfitness to practice medicine.

To prevent such a result our Supreme Court in *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67 [64 Cal.Rptr. 785, 435 P.2d 553] and *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214 [82 Cal. Rptr. 175, 461 P.2d 375] (decided at least two years before Board's decision), held that no state board could impose discipline upon licensees subject to its jurisdiction without finding upon substantial evidence that the misconduct charged rendered the licensee unfit to exercise the privileges of the license.

Although I accept the *Estrada* escape, I believe the above principle rejected by the majority opinion should be followed and applied to this case.

At bench the findings of Board and the trial court suggest no unfitness. Severally and together they affirmatively recite fitness. The doctrine of *Yakov* and *Morrison* is followed in *In re Higbie* (1972) 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97]; *Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187 [107 Cal.Rptr. 852]; *Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94 [100 Cal.Rptr. 73, 47 A.L.R.3d 742]; and *Grannis* v. *Board of Medical Examiners* (1971) 19 Cal.App.3d 551 [96 Cal.Rptr. 863] (herein referred to collectively as cited cases).

---

*All references herein are to Business and Professions Code unless otherwise noted.

*Morrison* involved a violation of section 13202 of the Education Code (sexual misconduct). Morrison had charged that section 13202 lacked constitutional due process on the grounds that: its language was vague and general; right of privacy was invaded, and the conduct charged did not relate to his duties as a teacher. The *Morrison* court conceding the specificity of section 13202 declared that ". . . it, could constitutionally apply to petitioner." (P. 230.)

In respect of violation of privacy the court said at pages 233-234: "It is true that an unqualified proscription against immoral conduct would raise serious constitutional problems. Conscientious school officials concerned with enforcing such a broad provision might be inclined to probe into the private life of each and every teacher, no matter how exemplary his classroom conduct. Such prying might all too readily lead school officials to search for 'telltale signs' of immorality in violation of the teacher's constitutional rights. (*Griswold* v. *Connecticut* (1965) 381 U.S. 479, 485 [14 L.Ed.2d 510, 515, 85 S.Ct. 1678].) The proper construction of section 13202, however, minimizes the danger of such sweeping inquiries. By limiting the application of that section to conduct shown to indicate unfitness to teach, we substantially reduce the incentive to inquire into the private lives of otherwise sound and competent teachers.

"Finally, petitioner urges that . . . his questioned conduct does not rationally relate to his duties as a teacher. . . . [T]he proper construction of section 13202 avoids this problem, for that interpretation would bar disciplinary action against petitioner unless the record demonstrated that petitioner's conduct did indicate his unfitness to teach." (Pp. 234-235.)

". . . Petitioner's conduct in this case is not disputed. Accordingly, we must inquire whether any adverse inferences can be drawn from that past conduct as to petitioner's teaching ability, . . .

"As to this crucial issue, the record . . . contains no evidence whatsoever. The board called no medical, psychological, or psychiatric experts to testify as to whether a man who had had a single, isolated, and limited homosexual contact would be likely to repeat such conduct in the future. The board offered no evidence that a man of petitioner's background was any more likely than the average adult male to engage in any untoward conduct with a student. The board produced no testimony from school officials or others to indicate whether a man such as petitioner might publicly advocate improper conduct. . . .

"This lack of evidence is particularly significant because the board failed to show that petitioner's conduct in any manner affected his performance as a teacher." (Pp. 235-236.)

At bench Board produced no evidence as suggested above or otherwise to show that petitioner's conduct as charged or otherwise affected his fitness as a doctor.[1] To the contrary, the Board found in pertinent part: "He is youthful, a good doctor, and the episode had no effect on his medical ability of [*sic*] his patients' well-being."

The trial court found: "9. Between January 1, 1970, to and including September, 1970, Petitioner engaged in the self-use of marijuana, a narcotic as defined in Section 11001 of the Health and Safety Code of California. 10. The charges against Petitioner do not relate to his professional conduct as a matter of fact." In pertinent conclusions of law the trial court declared: "1. The charges against Petitioner do not render him unfit to practice his profession. 2. The revocation of Petitioner's license herein constituted a taking of property without due process of law notwithstanding that petitioner's conduct comes within the ambit of Business and Professions Code, sections 2384 and 2390. 3. Respondent committed an abuse of discretion, within the meaning of Civil Procedure Code § 1094.5(b), in revoking petitioner's license."

All of the cited cases follow the principles of *Morrison* excerpted above.

Contra cases cited in the majority opinion and the brief of the Attorney General do not dispute the *Morrison* guidelines. (*Wilson* v. *State Personnel Bd.,* 39 Cal.App.3d 218 [114 Cal.Rptr. 134]; *Jennings* v. *Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776]; *McLaughlin* v. *Board of Medical Examiners* (1973) 35 Cal.App.3d 1010 [111 Cal.Rptr. 353]; *Collins* v. *Board of Medical Examiners* (1972) 29 Cal.App.3d 439 [105 Cal.Rptr. 634]; *Strode* v. *Board of Medical Examiners* (1961) 195 Cal.App.2d 291 [15 Cal.Rptr. 879].) In each of the contra cases: discipline was imposed *after* a finding on substantial evidence fortified by a finding of a trial court of unfitness of the licensee *irrespective* of moral turpitude, or there was a finding of unfitness due to an act involving moral turpitude, corruption or dishonesty which so impugned and besmirched the character of the licensee irrespective of demonstrated competence in the ambit of duties covered by the license as to render him an unfit person to serve the public as a member of a privileged class licensed by the state.

---

[1]Petitioner testified without contradiction that the episode occurred while he was in residency at the VA center (Wadsworth Hospital) and that although Dr. Jorgens, his immediate supervisor, attempted to persuade the hospital administrator to retain him, the administrator thought it was necessary for him to leave. Petitioner testified in part: "Dr. Jorgens . . . Dr. Mellinkoff of UCLA and Dr. Langdon, attempted to persuade the administrator that my abilities as a doctor had not been affected and that I would carry out my duties properly; the hospital administrator did not feel that I should continue there, or he was ordered by his superiors to ask me to leave."

Of the contra cases Board relies primarily on *Collins* v. *Board of Medical Examiners* (1972) 29 Cal.App.3d 439 [105 Cal.Rptr. 634]. In *Collins,* section 2384 was one of four charges of unprofessional conduct all of which were proved. The thrust of *Collins* is that if unfitness is found it is not necessary that it be tied to a finding of moral turpitude. There is at bench no contention that it should be.

*Collins* treats of a violation of section 2384 among others, and finds that the violations there charged and proved rendered the doctor unfit. The conviction in *Collins* of the 2384 violation was that Collins furnished narcotics to a person not under his treatment; and in addition there were numerous violations of section 2399.5, and section 11163, Health and Safety Code.

The offenses in *Collins* included multiple convictions of Health and Safety Code section 11163 which prohibits a doctor "Except in the regular practice of his profession . . . [*t*]*o prescribe* . . . a narcotic to any person not under his treatment . . . ." (Italics added.) The *Collins'* convictions were an abuse of Collins' responsibilities to the medical profession, himself, his patients, and the public. Signing prescriptions is a significant part of the practice of medicine. In passing it should be noted that marijuana is not a narcotic or even as a controlled substance or a dangerous drug it is not such for which a doctor can issue a prescription to himself or others. Marijuana is for sale to anyone who can pay. There is no dispute that the *Collins* court on the evidence before it was warranted in affirming Board's finding of unfitness.

*Jennings* v. *Karpe* (1974) 36 Cal.App.3d 709 [111 Cal.Rptr. 776] (filed Jan. 14, 1974) cited by Board, involves a real estate broker disciplined for conviction of conduct unrelated to the functions of his license (a felony violation of § 288a, admittedly an act involving moral turpitude). In *Wilson,* the most recent of the contra cases cited by Board, moral turpitude was the reason for discipline.

Other cases cited by Board have been examined. An analysis shows that discipline is imposed when the unprofessional conduct within or without the ambit of the licensed calling impairs the character, skill or competence of the licensee, and the evidence supports a finding of unfitness as in the case of *Collins,* or when the conduct of licensee inside or outside the ambit of the licensed calling involves moral turpitude, corruption or dishonesty and there is a finding that the licensee is unfit. In the latter situation the skill or competence of the licensee may or may not be involved; the character of the licensee is.

The majority concede, too, that if the unprofessional conduct charged

to petitioner under section 2384 were included in section 2390 Board would be required to make ". . . the additional showing that the doctor's professional ability was impaired . . . ."

However, when the two sections are read together, which appears to have been the legislative intention independent of *Morrison* and the cited cases, it seems clear that the Legislature never did intend by mere ipse dixit to set up an arbitrary and conclusive presumption of unfitness.

Under section 2390 as a condition to impose discipline the majority concede Board must prove that use of a controlled substance ". . . is dangerous or injurious" to the licensee ". . . to the extent that such use impairs the ability of such person . . . ." In brief, there must be a finding of unfitness. It should be noted, however, that the first clause of the first sentence of 2390 reads: "The use or prescribing for . . . himself of *narcotics specified in Sections 11001 or 11002* of the Health and Safety Code . . . ." (italics added) classes narcotics with dangerous drugs and alcoholic beverages in the clauses which immediately follow. It would appear, therefore, that the Legislature intended by the clause above quoted that 2384 and 2390 should be read together and that the hearing provided for in 2390 in respect of abuse by a licensee of alcohol or dangerous drugs should be extended to a self-user of narcotics and that the Legislature did specifically require proof and a finding that self-use of a narcotic, or a dangerous drug or alcohol ". . . impairs the ability of such person . . . to conduct with safety to the public the practice authorized. . . ."

Petitioner asserts, too, that section 2384 if read alone and literally applied is unconstitutional since it incorporates an arbitrary conclusive presumption and deprives him of a property right without due process of law. (*Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208]; *Cleveland Board of Education* v. *LaFluer* (1974) 414 U.S. 632, 643 [39 L.Ed.2d 52, 62, 94 S.Ct. 791].) The trial court did, indeed, conclude that Board's decision did deprive petitioner of a property right. Petitioner also asserts that the section is unconstitutional because it deprives him of equal protection of the law since a different application has been made of section 2384 with respect of an attorney (*In re Higbie* (1972) 6 Cal.3d 562 [99 Cal.Rptr. 865, 493 P.2d 97]), a teacher (*Comings* v. *State Bd. of Education* (1972) 23 Cal.App.3d 94 [100 Cal.Rptr. 73, 47 A.L.R.3d 742]), and an employee of the state (*Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187 [107 Cal.Rptr. 852]). (All three cited cases involve marijuana.)[2]

---

[2]Possession of marijuana for one's own use does not involve moral turpitude. Speaking on this subject, our Supreme Court in *In re Higbie* (1972) 6 Cal.3d 562, says at page 572 [99 Cal.Rptr. 865, 493 P.2d 97]: "Possession or use of marijuana

The majority opinion does not deal with this constitutional challenge. *Morrison* does meet the challenge but shows that the legislative intent was not to set up an arbitrary and absolute presumption, but that the statute there construed is only a guide to test unfitness. At bench *Morrison* is applicable in all respects and in addition it appears that the Legislature intended 2384 and 2390 to be read together. In these circumstances the direct constitutional question is not treated.

Board is a vital arm of the state government created by the Legislature to supervise and police its licensees to insure the public that doctors have a continuing good character and a continuing ability to practice medicine with that degree of skill and competence which meet the average norm of their profession. The state has not abdicated to Board its responsibility to punish for crime. It has done so in this case.[3]

The complete record shows that petitioner's medical skill, proficiency and character were before the Board, trial court, and are before this court. There is no suggestion of unfitness or that his fitness was impaired as a competent doctor nor is there any suggestion that petitioner was unfit because his character was impaired by reason of moral turpitude, dishonesty or corruption.

The naked fact in the case at bench is that petitioner in fixed off duty hours, when his judgment was neither invited nor used, to alleviate personal distress, smoked marijuana and suffered a misdemeanor conviction as a result.

Board's zealous efforts to fit petitioner's conduct within a literal reading of 2384 predicated upon no evidence of unfitness other than the record of misdemeanor conviction was a procrustean hearing which might well have been dispensed with unless Board had a reasonable belief that the presumption of the statute could not be refuted. Since the refutation was overwhelming an objective Board should have dismissed the proceeding. An ex-

---

is, of course, unlawful (see Health & Saf. Code, § 11530 et seq.), but measured by the morals of the day (*In re Hatch, supra,* 10 Cal.2d at p. 151) its possession or use *does not constitute* 'an act of baseness, vileness, or depravity . . . contrary to the accepted and customary rule of right and duty between man and man' (*In re Craig, supra,* 12 Cal.2d at p. 97), or indicate that an attorney is unable to meet the professional and fiduciary duties of his practice." (Italics added.)

[3] *Yakov* makes it clear that a disciplinary proceeding is not for punishment but to protect the public. (P. 73, fn. 6.)

pungement of Board's decision is the effective and proper method to "out" the "damned spot."[4]

A petition for a rehearing was denied October 15, 1974, and the petition of the defendant and appellant for a hearing by the Supreme Court was denied November 21, 1974.

---

[4]In a letter to respective counsel, dated March 7, 1973, the trial court said: "The conditions of probation are so vague that petitioner could, conceivably, permanently lose his license for a minor infraction."