[Crim. No. 9661. Fourth Dist., Div. Two. July 12, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT WAYNE WILSON, Defendant and Appellant.

**COUNSEL**

Paul N. Halvonik and Quin Denvir, State Public Defenders, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant

State Public Defender, Aurelio Munoz and Richard E. Ross, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Karl J. Phaler and Richard D. Hendlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McDANIEL, J.**—Defendant was an inmate at Chino on April 11, 1977. Early that morning Russell Bates, a correctional officer on duty in the Cedar Hall housing facility at Chino awakened inmate Weiner to facilitate Weiner's getting to some sort of early duty. Weiner was assigned to bunk No. 4027; defendant was assigned to bunk No. 4030 which was three bunks away from Weiner's on the same side of "A" Wing.

After awakening Weiner, Bates went to breakfast and then returned to Cedar Hall to perform a routine security check. Upon reentering "A" Wing he noticed that there were two persons in the area of Weiner's bunk, an area which he knew should have been unoccupied at that time. From a distance of between 20 and 30 feet Bates observed inmate Mongia seated on Weiner's bunk and defendant seated on a chair directly facing Mongia. With his three and one half years experience as a correctional officer, Bates recognized that defendant and Mongia were "pointing." This prison jargon is employed to describe a deliberate behavior which permits each of the two involved to watch anyone approaching from the rear of the other person.

Bates continued to walk toward the two who were "pointing." Defendant at the moment was looking down in his lap. When he was about 15 feet from defendant Bates saw defendant raise his head, face Bates, and then quickly lean forward, bending over between Mongia's legs. At the time this rapid change of posture occurred Bates caught a glimpse of a clear plastic object in defendant's hand. According to the record, Bates has 20-20 vision without correction, and the area of bunk 4027 was well lighted at the time of these events.

Immediately after bending over, defendant stood up, put his hands in his jacket pockets, and began to walk away. At this juncture Bates

ordered defendant to stop where he was. Bates then reached the bunk and asked defendant and Mongia where they were billeted and demanded that they produce their respective identification cards. Both defendant and Mongia complied.

Then while defendant and Mongia stood by, Bates conducted a search of the area around bunk No. 4027. On the floor in plain view, precisely in front of the chair in which defendant had been sitting, Bates found particles of loose marijuana. Bates then moved the bunk aside enabling him to see the area which had been under the bunk. Bates then spotted a plastic bag about four inches square containing a green leafy substance which he recognized as marijuana. Also under where the bunk had been Bates found an 8½ by 14-inch sheet of paper on which were packets of rolling paper and additional marijuana debris. In Bates' opinion, there was enough marijuana there to roll from 25 to 60 cigarettes. Later measurement indicated that the plastic bag which Bates found contained about 30 grams of marijuana.

Of significance to testimony by defendant, Bates did not see anything else in the vicinity of bunk No. 4027 except bed clothing. According to defendant's testimony, he and Mongia had met at bunk No. 4027 because defendant intended to sell to Mongia a pair of rubber shower shoes belonging to Weiner. It was these shower shoes which defendant testified were in his hand when Bates approached and which he placed on the floor by the bunk when he arose to walk away.

After these events occurred, the District Attorney of San Bernardino County filed an information charging defendant with possession of a narcotic in state prison in violation of section 4573.6 of the Penal Code.[1] The case was tried to a jury which returned a guilty verdict. Probation was denied, and defendant was sentenced to state prison for the term prescribed by law, such sentence to run consecutively to any earlier incompleted sentence. The court in pronouncing sentence determined that defendant was entitled to 130 days credit for presentence time. However, the written judgment as entered failed to reflect this presentence credit. Defendant appealed the judgment of conviction.

---

[1]In pertinent part section 4573.6 of the Penal Code reads: "Any person who knowingly has in his possession in any state prison . . . any narcotics, or drugs in any manner . . . without being authorized to so possess the same by the rules of the Department of Corrections . . . is guilty of a felony."

ISSUES, DISCUSSION AND DISPOSITION

The defendant makes four assignments of error, the principal of which is that the trial court misconstrued section 4573.6 of the Penal Code. More particularly, defendant argues that: "A. In enacting the California Uniform Controlled Substances Act, the Legislature evinced a clear intent to classify marijuana as a non-narcotic substance," and "B. The conclusion that possession of marijuana is not proscribed by Penal Code section 4573.6 is supported by established principles of statutory construction." In other words, defendant's position is that the cited section proscribes possession of certain substances in terms of "narcotics" and "drugs," and that marijuana, according to the defendant, is not now classified under the law as either.

Otherwise, the defendant contends: (2) because the jury was improperly instructed to assume lack of authorization, an element of the offense, and because no evidence was introduced as to this missing element, the judgment of conviction must be reversed; (3) no substantial evidence supported the judgment of conviction because evidence that appellant had access to the area where the marijuana was found, without more, was insufficient to establish that he possessed the marijuana; (4) the judgment of conviction must be corrected to reflect the trial court's order that appellant be given credit for 130 days in presentence custody.

Turning to the first major contention, defendant as noted contends that the term "narcotics," possession of which is proscribed by Penal Code section 4573.6 does not encompass possession of marijuana and, therefore, that the trial court erroneously instructed the jury that marijuana is a narcotic. Contrary to defendant's assertions, neither the intent of the Legislature in enacting the Uniform Controlled Substances Act nor principles of statutory construction support his contention but, rather, indicate the trial court properly instructed the jury that "[p]ursuant to Health and Safety Code 11032 the substance known as marijuana is considered to be a narcotic."

In 1972, the Legislature enacted division 10 of the Health and Safety Code, known as the California Uniform Controlled Substances Act. (Stats. 1972, ch. 1407, § 3, p. 2987; Health & Saf. Code, §§ 11000-11651.) Chapter 1 specifies the general provisions and definitions of the California Uniform Controlled Substances Act. (Health & Saf. Code, §§ 11000-

11032.) Section 11001[2] provides: "Unless the context otherwise requires, the definitions in [chapter 1] govern the construction of this division [division 10]."

Whereas former section 11001 had broadly defined "narcotics" to include marijuana and numerous other substances, the new statutory definition of "narcotic drug," for division 10 purposes only, encompasses only opium and cocaine substances and eliminates marijuana, as well as over two dozen other substances, from its classification. (Former § 11001; § 11019.)

Section 11032 provides as follows: "Whenever reference is made to the term 'narcotics' in any provision of law outside of this division, unless otherwise expressly provided, it shall be construed to mean controlled substances classified in Schedules I and II, as defined in this division. Whenever reference is made to 'restricted dangerous drugs' outside of this division, unless otherwise expressly provided, it shall be construed to mean controlled substances classified in Schedules III and IV. Whenever reference is made to the term 'marijuana' in any provision of law outside of this division, unless otherwise expressly provided, it shall be construed to mean marijuana as defined in this division."

Chapter 2 (§§ 11053-11058) establishes five schedules for controlled substances which correspond to those schedules set forth in the federal Controlled Substances Act of 1970. (21 U.S.C.A. § 812.) Section 11054, subdivision (d)(10) lists marijuana as one of the controlled substances in schedule I. Thus, by reference to schedule I, section 11032 dictates that, "unless otherwise expressly provided," the term "narcotics" "shall be construed" to include marijuana.

Therefore, when Penal Code section 4573.6, a provision of law outside of division 10, states, "Any person who knowingly has in his possession in any state prison . . . any narcotics, or drugs," it logically follows to construe the term "narcotics" as including marijuana. Accordingly, the trial judge in the present case properly instructed the jury to consider marijuana as a narcotic.

Defendant, however, contends that section 11032 evinces on its face a legislative intent to treat marijuana as a nonnarcotic substance, and therefore is inconsistent with the provision defining "narcotics" which, by

[2]Statutory references, unless otherwise indicated, are to the Health and Safety Code.

reference to schedule I in section 11054, includes marijuana. The answer to that is that the "marijuana" provision of section 11032 does not indicate a legislative intent to treat marijuana as a nonnarcotic substance for purposes of construing the term "marijuana" in provisions outside of division 10 and that no inconsistency of terms is present in section 11032.

The "marijuana" provision of section 11032 states that when the term "marijuana" is used in provisions of law outside of division 10 "it shall be construed to mean marijuana as defined in this division." Marijuana is defined in division 10 in section 11018.[3] It is significant that former section 11003.1 defined marijuana in substantially the same way as does the present definition found in section 11018, even though marijuana was then also considered a narcotic when the term "narcotics" was used in division 10. (Former § 11001, subd. (d).) The definition of marijuana is the same, whether it is to be considered a narcotic or not.

There is no inconsistency on the face of section 11032 or otherwise between the use of the definition of marijuana as provided for in section 11018 and the inclusion of marijuana as a "narcotic" in construing the term "narcotic" for laws *outside of division 10.*

Such a conclusion is consistent with the well settled principle: " 'Where possible, all parts of a statute should be read together and construed to achieve harmony between seemingly conflicting provisions rather than holding that there is an irreconcilable inconsistency. [Citations.]' " *(Estate of McDill,* 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874], quoting *Wemyss* v. *Superior Court,* 38 Cal.2d 616, 621 [241 P.2d 525].)

Defendant's reliance upon *Weissbuch* v. *Board of Medical Examiners,* 41 Cal.App.3d 924 [116 Cal.Rptr. 479], is misplaced. In *Weissbuch,* a licensed physician was convicted of possession of marijuana in January 1971, at a time when marijuana was classified by statute as a narcotic by section 11001. In July of 1971, disciplinary proceedings were commenced by the State Board of Medical Examiners. On the basis of his marijuana

[3]Section 11018 provides: " 'Marijuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture, or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination."

conviction, Dr. Weissbuch was found guilty of unprofessional conduct as defined in former Business and Professions Code sections 2384 and 2390.

Former Business and Professions Code section 2384 provided that a conviction of a violation of federal or state laws "regulating narcotics, or dangerous drugs" is, in itself, unprofessional conduct.

Former Business and Professions Code section 2390 provided in part as follows: "The use or prescribing for or administering to himself, of any of the narcotics specified in Sections 11001 or 11002 of the Health and Safety Code . . . constitutes unprofessional conduct."

In *Weissbuch,* the court concluded: "Under present law, this case would not have arisen. In 1972, the Legislature by enactment of the California Uniform Controlled Substances Act, eliminated marijuana as a narcotic from Health and Safety Code section 11001 and its successor section 11019 does not include marijuana as a narcotic, nor is it classified as a dangerous drug. [¶] Since this mitigating amendment was enacted prior to the Board's decision becoming final (review by mandamus was pending at the time the amendment became effective), petitioner is entitled to the benefit thereof under the principle of *In re Estrada,* 63 Cal.2d 740 . . . ." (*Weissbuch* v. *Board of Medical Examiners, supra,* 41 Cal.App.3d 924, 929.)

It is apparent that in *Weissbuch* the court was only looking to former section 11001 (as specified in Bus. & Prof. Code, § 2390) and its successor, section 11019, to ascertain the definition of narcotics, not to section 11032.

Nevertheless, defendant argues that *Weissbuch* "implicitly recognized that the inclusion of marijuana within the 'narcotics' clause of Health and Safety Code section 11032 . . . was inconsistent with the clear intent of the Legislature . . . that marijuana not be encompassed by general statutory prohibitions pertaining to possession of 'narcotics.' " There is no indication whatsoever in *Weissbuch* that the court was aware of or considering section 11032. The issue here raised by defendant simply was not addressed by the *Weissbuch* court.

It is noteworthy, at least with respect to Business and Professions Code section 2390 which expressly refers to "narcotics specified in [Section] 11001 . . . of the Health and Safety Code," that the *Weissbuch* decision is consistent with section 11032's definition of narcotics, because Business

and Professions Code section 2390 "otherwise expressly provided" for the definition of narcotics.

To the extent that *Weissbuch* ignored the provisions of section 11032 with respect to Business and Professions Code section 2384 (which did not expressly define "narcotics" as did Bus. & Prof. Code, § 2390), it was in error. In this regard, it is significant to observe that the 1974 legislative amendments to both Business and Professions Code sections 2384 and 2390 now include marijuana within their terms.[4]

Defendant argues further that to construe marijuana as covered by the term "narcotics" in Penal Code section 4573.6 will work "numerous 'palpable absurdities.' " As an example, defendant points to the distinction between prisoners and nonprisoners and attempts to show a discrepancy of treatment between the two. Defendant also raises the issue of equal protection "presented by subjecting *only one subclass of prisoners* . . . to substantially more severe penalties than those imposed upon their non-prisoner counterparts."

■ These contentions are totally groundless. Penal Code section 4573.6 prohibits "any person" from possessing narcotics, drugs, or alcoholic beverages within the limits of the enumerated institutions. It is a general statute, applying to visitors and correctional officers as well as to inmates. (*People* v. *Clark*, 241 Cal.App.2d 775, 778 [51 Cal.Rptr. 7]; *People* v. *Trout*, 137 Cal.App.2d 794, 795 [291 P.2d 83].)

■ In sum then, the trial court properly instructed the jury to consider marijuana as a narcotic pursuant to section 11032, possession of which is proscribed by Penal Code section 4573.6.

Next, as an assignment of error, defendant urges that the trial court improperly instructed the jury on the matter of "lack of authorization" as an element of the statutory proscription which prohibits possession of a narcotic or drug "without being authorized to . . . possess the same by the

---

[4]Business and Professions Code section 2384 provides in pertinent part: "The conviction of a charge of violating any federal statutes or rules or any statute or rule of this state, regulating narcotics, dangerous drugs or controlled substances, constitutes unprofessional conduct within the meaning of this chapter."

Business and Professions Code section 2390 provides in pertinent part: "The use or prescribing for or administering to himself, of any of the controlled substances specified in Schedule I of Section 11054, or Schedule II of Section 11055, or any narcotic drug specified in Schedule III of Section 11056, of the Health and Safety Code; or the use of any of the dangerous drugs specified in Section 4211 of this code. . . ."

rules of the Department of Corrections. . . ." Over objection of defendant's trial counsel, the court gave instruction No. 21 as follows: "To constitute illegal possession of a narcotic such as marijuana in a state prison it must be established that the defendant possessed the marijuana without authorization. Since possession of marijuana is a crime in this state anyone found to be in possession of marijuana is presumed to have illegal possession. Hence, if you find beyond a reasonable doubt that defendant was in possession of marijuana in state prison you must assume that he was in possession of marijuana without authorization."

■ The People argue and we agree that this instruction is a correct statement of the law. We start with the proposition that possession of marijuana is unlawful in California. (§ 11357.) However, there are no situations in which marijuana, like certain other controlled substances, can be prescribed by physicians. Thus it logically follows, where *marijuana* is involved that there can never be an "authorized" possession. As a consequence this contention is wholly without merit.

Next, defendant urges that there was no substantial evidence to support the guilty verdict, because, as characterized by defendant, the only evidence of possession was that defendant had access to the area where the marijuana was found. As noted by the Attorney General, this argument fails to take into account the totality of the evidence and reasonable inferences to be drawn therefrom. ■ As stated in *People v. Anderson*■ (Cal.App.), "The People may rely on circumstantial evidence to connect a defendant to the commission of the crime charged and to establish beyond a reasonable doubt that he committed it. If the circumstances reasonably justify the findings of the trier of fact, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding." (*Id.*■)

It is not necessary here to review the facts already recited to establish the predicate upon which the jury concluded that the defendant had the marijuana in his possession at the time Bates entered "A" Wing. Bates' story was and remains credible; the jury believed him, and that is the end of the line insofar as any evidentiary assignment of error goes.

Finally, we agree that the judgment must be modified to reflect the trial court's order that the defendant should be given credit for 130 days of presentence custody.

As modified the judgment is affirmed.

Gardner, P. J., and Kaufman, J., concurred.

A petition for a rehearing was denied August 7, 1978, and appellant's petition for a hearing by the Supreme Court was denied September 14, 1978.