Filed 2/17/15  P. v. Johnson CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TYWAN JOHNSON,<br><br>        Defendant and Appellant. | A139190<br><br>(Alameda County<br>Super. Ct. No. C170095) |

Appellant Tywan Johnson was convicted by jury of forcible oral copulation, robbery, and lesser included offenses of petty theft and battery[1] involving three separate victims in two cases consolidated over Johnson's objection.  Johnson contends that the trial court erred in consolidating his matters for trial, admitting evidence of a prior sexual battery under Evidence Code section 1108, and failing to properly instruct the jury on the use of such evidence.  He also argues instructional error on the requirement for jury unanimity as to the acts on which his forcible oral copulation conviction was based, and contends he was denied effective assistance of counsel to the extent that any of his claims of instructional error or prosecutorial misconduct may have been forfeited.  We affirm.

## I.    BACKGROUND

On October 31, 2012, Johnson was charged by information with the November 2011 robbery of Lorin Brown and the August 2012 robbery of Jason Le.  (Pen. Code, § 211.)  On November 7, 2012, Johnson was separately charged by information the

---

[1] Penal Code sections 288a, subdivision (c)(2)(A), 211, 488, and 242.

November 2010 robbery, forcible oral copulation, and forcible rape of Jane Doe. (*Id.*, §§ 211, 288a, subd. (c)(2)(A), 261, subd. (a)(2).) The second information alleged that Johnson had a prior serious felony conviction that qualified as a "strike." (*Id.*, §§ 667, subds. (a) & (e)(1), 1170.12, subd. (c)(1).)

The prosecution moved to consolidate the cases. The court granted the motion over Johnson's objection, and a consolidated information was filed on April 29, 2013.

A.     *Trial Evidence*

1.     *The Brown Robbery*

On November 11, 2011, Johnson was observed in an Oakland Walgreens store in the electronics aisle, holding several boxed electronics items ordinarily kept in a locked display case and which store policy required store personnel to retrieve and take directly to a register for purchase. The store's assistant manager alerted Brown, a store greeter whose responsibilities included theft deterrence. As Brown approached Johnson, Johnson walked toward the exit. Johnson refused Brown's request that he pay for the items at the register and continued toward the exit. When Brown blocked Johnson's path, Johnson pushed past Brown. Brown knocked the items from Johnson's hands. Johnson picked up one of the items, a DVD player, and walked toward a car in the parking lot. He threatened to hit Brown and brandished a can of mace at Brown. After putting the DVD player in a waiting car, Johnson again confronted Brown, attempting to strike him twice. Johnson then left in the vehicle. Much of the activity inside and outside the store was captured by surveillance cameras. On August 29, 2012, Brown identified Johnson from a photo lineup as the person who took the DVD player from the store. Both Brown and the store's assistant manager identified Johnson at trial as the robber.

2.     *The Le Robbery*

On August 8, 2012, cashier Le observed Johnson on closed circuit video in the refrigerated section of an Oakland QuikStop convenience store. Le watched Johnson put a can of Red Bull in his pocket. Johnson came to the front counter and asked for a $3 lottery ticket and gas for his car. Le asked Johnson if he intended to pay for the Red Bull. Johnson insisted that he had purchased the Red Bull "across the street." Le told Johnson

that a security video camera had recorded him putting the Red Bull in his pocket, and refused to serve Johnson. Johnson became angry, pushing a counter display rack toward Le and cutting Le's finger. Le threw a small display rack at Johnson, and Johnson threw a larger display rack at Le. Le was struck in the head and suffered a minor wound. Johnson left in a waiting vehicle, and Le recorded the license plate number. Le subsequently identified Johnson as the perpetrator in a photo lineup, and identified him in court at the time of trial. Security camera video of the confrontation between Le and Johnson was shown to the jury. The security camera video of Johnson placing the can of Red Bull in his pocket was not produced. While in custody, Johnson told a jail deputy that he had gone to a QuikStop market, stolen a Red Bull, and that the clerk had resisted, giving Johnson a cut on his face.

### 3. *Sexual Assault of Jane Doe*

Jane Doe worked as a prostitute in the International Boulevard area of Oakland. In the early morning hours of November 16, 2010, Johnson approached Jane Doe on the street and asked for a "date." She got into the front passenger seat of Johnson's car. Johnson drove her to an area behind an Alameda service station. Jane Doe insisted on payment in advance for sexual services, but Johnson said he would only pay after. He claimed to be a police officer and asked her if she wanted to go to jail.

Johnson took Jane Doe's purse from the floor of the car and rummaged through it. He turned off a cellphone in the purse, and initially placed the purse on the back seat of the car. He then exited the car with Jane Doe's purse, locking it in the trunk. When Johnson returned he demanded oral sex. When Jane Doe again said that he had to pay first, Johnson repeatedly threatened to beat her. Johnson exposed his penis, grabbed the back of her neck and pulled her head down, forcing his penis into her mouth. Johnson removed Jane Doe from the car and forced her to bend over the back of the vehicle. He then forced vaginal intercourse. Prior to intercourse, he put on two condoms, telling Jane Doe that he had to wear two condoms because she was "dirty" and a "ho"(whore). At some point, he stopped and removed the condoms, ordering Jane Doe to perform oral sex again. When Johnson was distracted and had his pants down, Jane Doe ran away.

Jane Doe ran into a nearby street and attempted to wave down cars. She was spotted by Alameda Police Officer Jeffery Emmitt. Emmitt found Jane Doe crying and shaking, and visibly distraught. She cried hysterically as she was questioned. She showed Alameda Police Officer Cameron Miele the area where the assault occurred. Miele observed a pair of condoms on the ground, one inside the other. The condoms were collected as evidence. Miele took Jane Doe to the hospital for a sexual assault examination. The examination revealed no physical injuries.

Miele took three statements at various times from Jane Doe the morning of the attack, each with progressively more details. Jane Doe initially did not say she had been raped, only that she had been kidnapped from International Boulevard in Oakland and the kidnapper had stolen her purse. She described the rape during the second and third interviews. Recordings of the last two statements were played for the jury.

Criminalist Christine Lee received the condoms and took swabs from inside and outside without separating the two. Epithelial cells found on the exterior contained a DNA mixture from two contributors, a major female contributor and minor contributor. Jane Doe was identified as the likely major contributor. A DNA profile of the minor contributor was extracted and entered into the Combined DNA Index System.

About a year and a half later, Alameda police were notified of a "hit" on the DNA profile taken in Jane Doe's case. Based on that information, Jane Doe was shown a photo lineup including Johnson's photograph. She identified Johnson as the person who attacked her.[2] Investigating officers then obtained a buccal swab from Johnson. A comparison of DNA from the swab and the male DNA profile from the condom could not exclude Johnson as the contributor, with the probability of including a random unrelated person to the profile estimated to be one in 216 quadrillion Caucasians, one in 33 quadrillion African-Americans, one in 3.5 trillion Southeast Hispanics, and one in 1.75 quintillion Southwest Hispanics.[3]

---

[2] Jane Doe also identified Johnson in court as the person who attacked her.

[3] Johnson is African-American.

4

4.      *Prior Sexual Battery*

Susannah Doe testified to an incident involving Johnson in April 2003. While in the women's bathroom of a Berkeley nightclub, Johnson emerged from a stall, came up behind her, punched her in the cheek and ear, and clamped his hand over her mouth. He reached under her shirt and fondled her breasts, pulling her onto the floor. He punched her several times in the ribs. Johnson attempted to push her into a bathroom stall, but fled when someone entered the bathroom. He was apprehended by a security guard near the nightclub, and Susannah Doe identified Johnson as her attacker to police. She testified that she sustained a broken rib and photographs of her injuries were shown to the jury, including bruises and scrapes on her arms and legs, cuts and bruises on her mouth and face. Susannah Doe identified Johnson in court as the man who had attacked her.[4]

5.      *Defense Case*

In addition to other impeachment witnesses, Johnson presented the expert testimony of a sexual assault forensic nurse examiner, who had reviewed the report of Jane Doe's sexual assault examination and confirmed that there were no findings of injuries. He also presented the testimony of a psychologist as an expert in perception, memory and factors affecting reliability of eyewitness identification.

B.      *The Verdict*

Regarding Jane Doe, the jury found Johnson guilty of forcible oral copulation, but acquitted him of the rape and robbery charges. Johnson was convicted of the robbery of Brown. He was acquitted of robbing Le, but found guilty of lesser included misdemeanor offenses of petty theft and battery. The serious felony and prior strike allegations were tried to the court and found true.[5] Johnson was sentenced to an aggregate term of 18 years and four months in state prison. He filed a timely notice of appeal.

---

[4] On January 9, 2006, following a mistrial of the case involving Susannah Doe, Johnson entered a plea of no contest to false imprisonment by force and violence, which was alleged in the current matter as a basis for sentence enhancement (Pen. Code, §§ 236, 667, subd. (a)(1) [serious prior felony].)

[5] A second prior conviction for attempted grand theft was stricken.

## II.    DISCUSSION

Johnson argues that consolidation of the Brown and Le robbery charges with the sex offenses involving Jane Doe "violated Evidence Code section 1108" and infringed upon his due process rights.  He contends that the court's instructions further allowed the jury to improperly consider the prior sexual battery as evidence against him on all charges, and that the prosecutor committed misconduct by arguing for improper consideration of the evidence.  Johnson further insists that his conviction for forcible oral copulation must be reversed because the evidence established two separate and discrete acts of oral copulation, and the court failed to instruct the jury that they must unanimously agree which of the two acts he committed.  Finally, Johnson asserts that his trial counsel provided ineffective assistance to the extent that any of his arguments have been forfeited or waived by failure to object or to request modified instructions.  We find no merit in any of these contentions.

A.    *Consolidation*

Two or more offenses "of the same class" or "connected together in their commission" may be charged and tried together, but the trial court may sever counts in the interest of justice.  (Pen. Code, § 954.)  Penal Code section 954 authorizes, but does not require, a trial court to consolidate two or more accusatory pleadings for trial in an appropriate case.  (*People v. Merriman* (2014) 60 Cal.4th 1, 37 (*Merriman*).)

"The purpose underlying [Penal Code section 954] is clear:  joint trial 'ordinarily avoids the increased expenditure of funds and judicial resources which may result if the charges were to be tried in two or more separate trials.'  [Citation.]  'A unitary trial requires a single courtroom, judge, and court attach[és].  Only one group of jurors need serve, and the expenditure of time for jury voir dire and trial is greatly reduced over that required were the cases separately tried.  In addition, the public is served by the reduced delay on disposition of criminal charges both in trial and through the appellate process.' [Citations.]"  (*People v. Soper* (2009) 45 Cal.4th 759, 772.)  "[B]ecause consolidation or joinder of charged offenses ordinarily promotes efficiency, that is the course of action

6

preferred by the law.  [Citations.]"  (*Alcala v. Superior Court* (2008) 43 Cal.4th 1205, 1220 (*Alcala*).)

Johnson takes issue with the trial court's consolidation of the Brown and Le robbery charges with the "sex offense charges," ignoring the fact that he was also charged with a robbery of Jane Doe.  Moreover, the forcible oral copulation, rape, and robbery counts all alleged assaultive conduct, and are offenses "of the same class," making joinder proper under Penal Code section 954.  (*People v. Capistrano* (2014) 59 Cal.4th 830, 848–849 [robbery and sexual offenses of the same class of assaultive conduct]; *People v. Kraft* (2000) 23 Cal.4th 978, 1030 [murder and sexual assault offenses of the same class]; see also *Merriman*, *supra*, 60 Cal.4th at p. 37.)  Under such circumstances, it is a defendant's burden to show error in allowing a joint trial of the charged offenses and relief will obtain only on a clear showing of prejudice to establish the trial court's abuse of discretion.  (*Alcala, supra,* 43 Cal.4th at p. 1220; see also *People v. Soper, supra,* 45 Cal.4th at p. 774.)

An abuse of discretion is shown only if the trial court's ruling " ' " ' "falls outside the bounds of reason." ' " ' "  (*Alcala, supra,* 43 Cal.4th at p. 1220; *People v. Ramirez* (2006) 39 Cal.4th 398, 439.)  "In making that assessment, we consider the record before the trial court when it made its ruling.  [Citation.]  'The factors to be considered are these: (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.' [Citations.]"  (*Alcala,* at pp. 1220–1221.)  "In the context of properly joined offenses, we assess potential prejudice not under Evidence Code section 352, but instead in the context of the traditional four factors outlined above . . . ."  (*Alcala,* at p. 1222, fn. 11.)

Johnson concedes here, as he did in the trial court, that the charges in the consolidated matters are of the same class and subject to consolidation under Penal Code section 954.  He does not contend on appeal that any of the charges were likely to

7

"unusually inflame the jury," and none of the charges is a capital offense. In the trial court, Johnson argued that consolidation would join a strong case for the two robberies to bolster a weak sex offense case, and that evidence relating to the offenses was not cross-admissible. He contended that consolidation would allow the prosecution to introduce "back door" character evidence against him. On appeal, Johnson focuses exclusively on the issue of cross-admissibility of evidence, contending that it was incumbent on the trial court to consider how admission of Evidence Code section 1108[6] evidence would affect the trial of the nonsex offense charges, and whether Susannah Doe's testimony would unfairly prejudice his defense to the nonsex offense charges.[7]

As to cross-admissibility, however, "[Penal Code] section 954.1 expressly provides that 'where two or more accusatory pleadings charging offenses of the same class of crimes or offenses have been consolidated, evidence concerning one offense or offenses *need not* be admissible as to the other offense or offenses before the jointly charged offenses may be tried together before the same trier of fact.' (Italics added.) Thus, 'cross-admissibility is not the sine qua non of joint trials.' [Citation.]" (*People v. Geier* (2007) 41 Cal.4th 555, 575, overruled on other grounds by *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305.) More importantly, Johnson's argument ultimately rests on the foundational premise that the jury was allowed to improperly consider the section 1108 evidence with respect to the charged robberies of Brown and Le. We discuss and reject this underlying premise *post*, Johnson has consequently "failed to carry his burden of making the clear showing of prejudice required to establish that the trial court abused its discretion in declining to sever the . . . charges." (*Alcala*, *supra,* 43 Cal.4th at p. 1227; *People v. Soper, supra,* 45 Cal.4th at p. 773.)

---

[6] Undesignated statutory references are to the Evidence Code.

[7] Johnson relies on the trial court's colloquy in granting the consolidation motion to assert that there is no indication the court considered cross-admissibility or any of the other factors outlined in *Alcala*. As the People note, the relevant factors were discussed in the prosecution's motion, defense opposition, and in oral argument. We presume that the trial court knew, and properly applied, the correct law in the exercise of its official duties. (*People v. Sangani* (1994) 22 Cal.App.4th 1120, 1138.)

Johnson is correct that, even where the trial court acted well within its discretion in consolidating charges, "we must further inquire whether events *after* the court's ruling demonstrate that joinder actually resulted in 'gross unfairness' amounting to a denial of [his] constitutional right to fair trial or due process of law. [Citations.]" (*Merriman, supra,* 60 Cal.4th at p. 46; *People v. Rogers* (2006) 39 Cal.4th 826, 851.) As discussed *post*, we find no gross unfairness.

B.    *Section 1108 Evidence*

Section 1101, subdivision (a) provides that "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." Section 1108, subdivision (a), however, provides that "[i]n a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352." Johnson contends that the court erred in admitting evidence of his assault of Susannah Doe in the trial of nonsexual offenses and failing to adequately assess the probative value of that evidence with respect to Jane Doe's allegations. We review "the admissibility of evidence of prior sex offenses under an abuse of discretion standard. [Citation.]" (*People v. Wesson* (2006) 138 Cal.App.4th 959, 969.)

Johnson's first contention is that it was error to admit evidence of the prior sexual battery at all, arguing that significant dissimilarities between the earlier offense and the charges involving Jane Doe gave such evidence only limited probative value, compared to its prejudicial effect. The prosecution offered the evidence under both sections 1108 and 1101, subdivision (b), "to prove intent, common plan or scheme, and absence of mistake or accident."[8] The court admitted the evidence only under section 1108, and did

_____

[8] "Nothing in this section prohibits the admission of evidence that a person committed a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted

9

not reach the issue of admissibility under section 1101, subdivision (b). Section 1101, subdivision (b) requires a sufficient degree of similarity between charged and uncharged offenses, but admissibility under section 1108 does not. (*Merriman*, *supra*, 60 Cal.4th at p. 41.) Similarity between sexual crimes increases the probative value of prior sexual offense evidence. (*People v. Lewis* (2009) 46 Cal.4th 1255, 1287.) While lack of similarity remains relevant to the court's decision whether to exclude section 1108 propensity evidence as more prejudicial than probative, "that factor is not dispositive." (*Merriman,* at p. 42.)

Section 1108 was intended in sex offense cases "to assure that the trier of fact would be made aware of the defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).) This is because "[b]y their very nature, sex crimes are usually committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes. [Citation.]" (*Falsetta,* at p. 915 [discussing legislative history].) Evidence that a defendant committed other sex offenses is at least circumstantially relevant to the issue of his disposition or propensity to commit these offenses. (*Id*. at pp. 915, 920; *People v. Loy* (2011) 52 Cal.4th 46, 61 [the Legislature has determined this evidence to be " ' "particularly probative" ' " in sex cases].) Section 352 provides a constitutional "safeguard" in admitting such propensity evidence. (*Falsetta,* at pp. 916–917.) The Supreme Court outlined the factors that a trial court must consider in determining whether to admit evidence of other sex offenses under section 352. These factors include the "nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main

---

unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." (§ 1101, subd. (b).)

inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*Falsetta,* at p. 917.)

The record demonstrates that the court considered the relevant *Falsetta* factors and performed its duty to balance the probative value of this evidence against its prejudicial effect. (*People v. Lewis*, *supra*, 46 Cal.4th at p. 1285.) The trial court carefully considered the pleadings submitted and the argument of counsel. The trial judge specifically addressed the similarities and dissimilarities between the assaults on Jane Doe and Susannah Doe and found the proffered evidence probative with respect to the new charges, noting that "there was violence in both cases when he couldn't get his way with the women involved." The court found that the evidence was no more inflammatory than that anticipated on the current charges, that the probative value outweighed any prejudicial effect, and that even with admission of the section 1108 evidence, Johnson would "be able to receive a fair trial on the charged crimes in this case." Johnson fails to demonstrate that the trial court abused its considerable discretion in admitting the evidence.

While not clearly differentiated, Johnson appears to make a second argument that it was error to admit the section 1108 evidence in a case that included unrelated nonsex offense charges. Johnson cites several cases (*People v. Story* (2009) 45 Cal.4th 1282, 1291; *Falsetta, supra,* 21 Cal.4th at p. 916; *People v. Walker* (2006) 139 Cal.App.4th 782, 797) for the proposition that such evidence is admissible "only when he is charged with committing another sex offense." But such a proposition is very different than saying the evidence is inadmissible unless a defendant is charged *only* with committing another sex offense. Johnson cites no case so holding, and we find none. While the potential effect of section 1108 evidence on trial of other nonsex offense charges may be a relevant factor in the court's overall assessment of prejudice under section 352, it creates no automatic bar if the evidence is relevant to a charged sex offense.

11

C.    *Claimed Instructional Error*

    1.    *Use of Section 1108 Evidence*

Johnson contends that the trial court erred in failing to instruct the jury about limitations on their use of the prior sexual battery evidence. Specifically, he complains that the court did not advise the jury how to consider the evidence in connection with the current sexual assault charges, and that the court failed to advise the jury that the prior sexual battery evidence could not be considered in deciding Johnson's guilt with regard to the Brown and Le robbery charges.

The court instructed using a modified version of CALCRIM No. 375. That instruction is designed for use when evidence of prior misconduct is introduced under section 1101, subdivision (b).[9] The instruction, as given, read:

---

[9] The appropriate instruction for use in evaluation of prior sex offenses admitted under section 1108 is CALCRIM No. 1191. It appears that during the instruction conference, neither the court nor counsel was able to immediately locate the section 1108 instruction, and the court therefore elected to modify CALCRIM No. 375. CALCRIM No. 1191 reads: "The People presented evidence that the defendant committed the crime[s] of *<insert description of offense[s]>* that (was/were) not charged in this case. (This/These) crime[s] (is/are) defined for you in these instructions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged offense[s]. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden of proof, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the uncharged offense[s], you may, but are not required to, conclude from that evidence that the defendant was disposed or inclined to commit sexual offenses, and based on that decision, also conclude that the defendant was likely to commit [and did commit] *<insert charged sex offense[s]>*, as charged here. If you conclude that the defendant committed the uncharged offense[s], that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of *<insert charged sex offense[s]>*. The People must still prove (the/each) (charge/[and] allegation) beyond a reasonable doubt. [¶] [Do not consider this evidence for any other purpose [except for the limited purpose of *<insert other permitted purpose, e.g., determining the defendant's credibility>*]."

12

"The People presented evidence that the defendant committed the offense of Sexual Battery that was not charged in this case. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the offense. Proof by a preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you conclude that the defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Forcible Oral Copulation and/or Forcible Rape. The People must still prove every charge beyond a reasonable doubt."

Among other case-specific provisions, the court deleted from the pattern instruction a bracketed provision which read: "Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime." The prosecution argued that since the purpose of section 1108 was to admit propensity evidence, jurors "don't have to say that he has a bad character but it's in their purview." The court overruled defense counsel's objection.

Johnson does not contend that the instruction, as given, misstates the law. He objected to the instruction only to the extent that the court deleted the prohibition on consideration of the evidence to show bad character or criminal disposition. He did not otherwise object to use of modified CALCRIM No. 375, and when the court read the proposed language of the instruction in conference, responded "[t]hat's fine." Johnson's contention is not that the instruction is incorrect, but that it is inadequate.

We review the legal adequacy of an instruction independently. (*People v. Cole* (2004) 33 Cal.4th 1158, 1210; *People v. Alvarez* (1996) 14 Cal.4th 155, 218.) We consider a challenged instruction " 'not . . . in artificial isolation,' but . . . in the context of the instructions as a whole and the trial record" to determine " 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that

violates the Constitution.  [Citation.]"  (*Estelle v. McGuire* (1991) 502 U.S. 62, 72, fn. omitted; *People v. Jablonski* (2006) 37 Cal.4th 774, 831.)

To the extent Johnson contends that the court was required to "articulate for the jury what probative value the evidence could have" with respect to the charged sex offenses, he is incorrect.  In the first instance, he did not ask the court to clarify or amplify the instruction in this manner, and may not complain on appeal that the instructions were incomplete in this respect.  (*People v. Cole, supra,* 33 Cal.4th at p. 1211.)  Moreover, the court is not required to instruct the jury as to the admissibility or use of other crimes evidence.  (*People v. Cottone* (2013) 57 Cal.4th 269, 293; *Falsetta, supra,* 21 Cal.4th at p. 923 [" '[i]nstructions bearing on the weight to be attached to a particular piece of evidence are properly refused' "].)  "Whether the evidence proves what the prosecution urges is a question of fact and logic requiring no additional sua sponte instruction.  [Citation.]"  (*Cottone,* at p. 293.)  Johnson's suggestion that the jury should have been explicitly precluded from considering the prior sexual battery as evidence of bad character or disposition to commit crime is likewise mistaken.  Evidence admitted under section 1108, unlike evidence admitted under section 1101, *is* propensity evidence and may be considered, once admitted, "for any proper purpose."  (*Falsetta,* at p. 922.)

Johnson is correct that the evidence was not relevant, and should not have been considered by the jury, in determining his guilt of the robbery charges.  The question is whether there is a reasonable likelihood that the jury misunderstood the applicable law.  (*People v. Pearson* (2012) 53 Cal.4th 306, 324; *People v. Kelly* (1992) 1 Cal.4th 495, 525.)  Considering, as we must, the instructions as a whole (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016), we find no reasonable likelihood that the jury suffered any confusion on this issue.  The contested instruction was read to the jury immediately following the instructions on rape (CALCRIM No. 1000) and forcible oral copulation (CALCRIM No. 1015).[10]  The instruction specifically told the jury that, if it concluded

---

[10] The instructions were also provided to the jury in writing.

14

Johnson had committed the assault on Susannah Doe "that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is *guilty of Forcible Oral Copulation and/or Forcible Rape.*" (Italics added.) No reference was made to the robbery charges, and we cannot see how this instruction could reasonably be read to include the other offenses. In addition to modified CALCRIM No. 375, the jury was also given CALCRIM No. 303, reminding them that "[d]uring the trial, certain evidence was admitted for a limited purpose. You may consider that evidence for that purpose and no other."

Johnson cites the recent case of *People v. Jandres* (2014) 226 Cal.App.4th 340 as demonstrating that an incorrect instruction on consideration of section 1108 evidence requires reversal. But in that case the trial court's instruction, in contrast to the instruction here, specifically told the jury that it could consider evidence of an attempted kidnapping to show that the defendant was " 'likely to commit *the charged crimes*,' " which included nonsex offenses. (*Id.* at p. 359.) Moreover, the *Jandres* court found that it was error to introduce the section 1108 evidence in the first instance. (*Id.* at p. 357.)

Johnson argues that the prosecutor, in closing argument, nevertheless urged the jury to consider the evidence "as a whole" as to all the charged counts. In addition to the specific instruction language challenged, a reviewing court considers " 'the instructions as a whole[,] the jury's findings' [citation], and counsel's closing arguments to determine whether the instructional error 'would have misled a reasonable jury . . .' [citation]." (*People v. Eid* (2010) 187 Cal.App.4th 859, 883; quoting *People v. Cain* (1995) 10 Cal.4th 1, 36–37.) We discuss the prosecutor's comments *post* in connection with Johnson's claim of prosecutorial misconduct, but we do not read those comments out of context as Johnson would have us do. Further, the jury was instructed that statements of counsel, including those in closing argument, are not evidence (CALCRIM No. 222), and that if the attorneys' comments on the law conflicted with the court's instructions, the jurors were required to follow the court's instructions (CALCRIM No. 200). We must presume that the jury followed this instruction. (*People v. Boyette* (2002) 29 Cal.4th 381, 436; *People v. Najera* (2006) 138 Cal.App.4th 212, 224.) We further presume that jurors

both understand and follow limiting instructions given by the court on their consideration of evidence—a " 'crucial assumption underlying our constitutional system of trial by jury.' " (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

We find that the jury was fully apprised of the applicable law and that Johnson has failed to establish a reasonable likelihood that the jurors were misled or confused by the instructions given by the court.

2.      *Unanimity*

Johnson contends that, although he was charged with one count of forcible oral copulation, Jane Doe's testimony evidenced two separate and discrete acts of oral copulation, one occurring before vaginal intercourse and one after.  He argues that the trial court therefore committed error in failing to instruct the jury that it must unanimously agree on which act or acts Johnson committed in order to convict.

"Defendants in criminal cases have a constitutional right to a unanimous jury verdict.  [Citation.]  From this constitutional principle, courts have derived the requirement that if one criminal act is charged, but the evidence tends to show the commission of more than one such act, '*either* the prosecution must elect the specific act relied upon to prove the charge to the jury, *or* the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act.' [Citations.]" (*People v. Napoles* (2002) 104 Cal.App.4th 108, 114.)  " 'The [unanimity] instruction is 'designed in part to prevent the jury from amalgamating evidence of multiple offenses, no one of which has been proved beyond a reasonable doubt, in order to conclude beyond a reasonable doubt that a defendant must have done *something* sufficient to convict on one count.' [Citation.]" (*People v. Russo* (2001) 25 Cal.4th 1124, 1132.)

The People appear to concede that the evidence established more than one offense, but contend no unanimity instruction was required because the prosecution made an election as to the act of oral copulation that was the basis for the charge and there is no reasonable possibility of disagreement among the jurors as to which act constituted the offense.  The People argue that, although no express election was made, the prosecutor

16

made a de facto election by focusing, in opening statement and closing argument, on the acts occurring before the vaginal intercourse. Some cases have held that a prosecutor's statements and arguments may be an election of what conduct by a defendant amounted to the crime charged, obviating the need for a unanimity instruction. (See *People v. Mayer* (2003) 108 Cal.App.4th 403, 418–419; *People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1455; but see *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536 ["[b]ecause the prosecutor did not directly inform the jurors of his election and of their concomitant duties, it was error for the judge to refuse a unanimity instruction . . ."].)

We believe that a unanimity instruction was not required for a different reason. A unanimity instruction is not required when the multiple acts alleged are so closely connected as to form part of one transaction or course of criminal conduct. (*People v. Benavides* (2005) 35 Cal.4th 69, 98; *People v. Stankewitz* (1990) 51 Cal.3d 72, 100; *People v. Hernandez* (2013) 217 Cal.App.4th 559, 572.) This exception has often been applied in sexual assault prosecutions when the assault was essentially continuous and occurred over a relatively short period of time. (See, e.g., *People v. Gonzalez* (1983) 141 Cal.App.3d 786, 791–792 [a conviction for rape with two acts in evidence, but the acts occurred within minutes of each other and no evidence that would have allowed the jury to accept a defense of consent as to only one], disapproved on other grounds in *People v. Kurtzman* (1988) 46 Cal.3d 322, 330; *People v. Mota* (1981) 115 Cal.App.3d 227, 233 ["many continuous acts of forced sexual intercourse which were committed by each assailant were part of the same event since they were all committed within an hour's time in the back of the van"]; *People v. McIntyre* (1981) 115 Cal.App.3d 899, 910 [two acts of forcible oral copulation, one immediately before and one immediately after a rape, did not necessitate unanimity instruction], disapproved on other grounds in *People v. Adams* (1986) 186 Cal.App.3d 75, 80.)

The circumstances in *People v. McIntyre, supra,* 115 Cal.App.3d 899, were nearly identical to those presented here. In that case, the victim was forced to orally copulate the defendant and was then raped and forced to orally copulate the defendant a second time. (*Id.* at p. 904.) The reviewing court concluded that no unanimity instruction was

required on the single oral copulation count, reasoning as follows: "The fact that a second forced oral copulation occurred within a few minutes during this sexual attack does not necessarily make this another separate crime any more than it would be true there are separate crimes of battery if the actor throws a right-hand punch to his victim and immediately follows it with a left-hand punch. Similarly, if only one punch lands on the victim, the law does not require the jury to agree on whether it was the right or the left-hand punch which reached its mark. Whether there was an offense of oral copulation on that particular evening does not depend on whether the jury is in accord it was committed at 12:30 or 12:35 a.m. It is only incumbent they agree an oral copulation occurred on that date . . . ." (*Id.* at p. 910.) Moreover, there is no need for a unanimity instruction " ' "when the defendant offers essentially the same defense to each of the acts, and there is no reasonable basis for the jury to distinguish between them." [Citations.]' [Citation.]" (*People v. Percelle* (2005) 126 Cal.App.4th 164, 181.) Johnson's defense was not that the oral copulations had not occurred, but that Jane Doe complained only after his failure to pay for her services. No unanimity instruction was required.

Finally, even if we were to assume that such an instruction was required, we would find any error harmless.[11] "[E]rroneous failure to give a unanimity instruction is harmless if disagreement among the jurors concerning the different specific acts proved is not reasonably possible. [Citations.]" (*People v. Napoles*, *supra*, 104 Cal.App.4th at p. 119, fn. omitted.) As in *Napoles,* this case was reduced to a single credibility dispute. When a defendant proffers the same defense to multiple acts, a guilty verdict indicates that the jury did not believe and rejected the only defense offered in toto (at least as to

---

[11] A split of opinion exists as to whether the applicable standard of harmless error is that under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*), requiring a defendant to show that a probability of a more favorable result, or the more rigorous standard of *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*), requiring a determination beyond a reasonable doubt whether a jury actually rested its verdict on evidence establishing the requisite crime elements independently of the force of a misinstruction. (See *People v. Wolfe* (2003) 114 Cal.App.4th 177, 185–186 & cases cited therein.) We reach the same result applying either standard.

18

this count). (See *id.* at p. 120.) Failure to give a unanimity instruction was therefore harmless under either *Watson* or *Chapman*.

D.    *Prosecutorial Misconduct*

Johnson contends that the prosecutor committed misconduct by misrepresenting the law to the jury in his argument:  first, by telling the jury they could consider the prior sexual battery evidence for whatever purpose they saw fit; and, second, in arguing that Johnson was a person of criminal character.  " 'In general, a prosecutor commits misconduct by the use of deceptive or reprehensible methods to persuade either the court or the jury.  [Citations.]' [Citation.]" (*People v. Bradford* (1997) 15 Cal.4th 1229, 1333.) "It is misconduct for a prosecutor to misstate the law during argument.  [Citation.]" (*People v. Otero* (2012) 210 Cal.App.4th 865, 870; *People v. Marshall* (1996) 13 Cal.4th 799, 831.)

Johnson acknowledges that he made no contemporaneous objection to these comments, and sought no admonition to the jury to disregard them.  The argument is therefore forfeited.  " 'To preserve for appeal a claim of prosecutorial misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct.  [Citation.]' [Citations.]" (*People v. Bradford, supra,* 15 Cal.4th at p. 1333; see also *People v. Coddington* (2000) 23 Cal.4th 529, 595 [" 'defendant bears the responsibility to seek an admonition if he believes the prosecutor has overstepped the bounds of proper comment, argument, or inquiry' "], overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn 13.)

Johnson argues that any objection would have been futile in light of the court's earlier rejection of his objections to modified CALCRIM No. 375.  We disagree.  We find nothing in the court's colloquy with counsel regarding the instructions to suggest that the court viewed the section 1108 evidence as admissible or relevant with respect to the Le and Brown robberies, and nothing to suggest that it would have been futile for Johnson to object to any prosecutorial inference otherwise or to ask for an express

admonition in this regard. We nevertheless consider the substance of this argument in the context of Johnson's claim that his trial counsel was ineffective for failing to object.

Johnson contends that the prosecution improperly argued that the evidence of the prior sexual battery on Susannah Doe could be considered, without limitation, for any purpose. He cites a statement by the prosecutor that, if the jury found by a preponderance of the evidence the allegations to be true, "you can use that information however it is you see fit." He also quotes a prosecution statement that "[i]f I prove to you 51 percent, more likely than not, that's it, then you can use that information however you see fit; however it is that you feel that's important in your decision-making process, you can use that." However, as the People point out, both statements were made in connection with argument specifically addressed to the sexual assault charges regarding Jane Doe. And in discussing the evidence regarding Susannah Doe, the prosecutor focused on the elements of sexual battery (CALCRIM No. 935) that he was required to prove. No reference was made to the Le and Brown robbery charges, and nothing in the context of the prosecutor's remarks can be reasonably interpreted to suggest such a connection.

While not expressly referencing the section 1108 evidence, Johnson insists that the prosecution otherwise alluded to it by arguing to the jury that all evidence presented at trial should be considered as a whole, and the evidence showed Johnson was simply a person of criminal character. Johnson cites specifically to the prosecutor's closing statements: "What we have seen here throughout the course of this trial in the couple of weeks we have been together is that the Defendant is a man who will take what he wants, and it doesn't really matter if anyone is going to get in his way or if anyone is going to stop and challenge him, because he is going to take what he wants, whether it be a bunch of DVD players from a Walgreens, whether it be a Red Bull from a store, or whether it be sex. It doesn't really matter, because no one is going to stop Tywan Johnson from getting what he wants. And if you do, if you do try to stop him, if you do try and stand in front of him at the store, if you do tell him that you're going to not let him have business there, if you're going to now allow him to walk out with that Red Bull, or if you just tell him no during the course of a sexual encounter, he's going to take it anyway. And that's just

20

what we know about him. We have seen with our own two eyes on video that the Defendant has absolutely no impulse control. He can't control his behavior. Bottom line." Johnson complains that in summing up his argument to the jury, the prosecutor again attacked Johnson's character as someone who would take what he wanted by force and violence if necessary: "So I go back to what I told you from the very beginning. Everything about Tywan Johnson that we know in this case supports the fact that he is the type of person who cannot control his impulses. He is the type of person who is willing to steal DVD players, not care whether or not anyone sees him, and then if you try and stop him, he'll get violent. [¶] He's the kind of person that's willing to take a Red Bull. If you tell him he has to pay for it or you tell him you're not going to serve him anymore, he's the type of person who is going to throw metal shelves at their head. That's just the type of person he is. He reacts with violence. [¶] And then, of course, we don't have it on video, but you're going to be asked to determine whether or not Tywan Johnson is the type of person who would try to talk his way into free sex with a prostitute, and if she says no, whether he would respond with force and fear. And the answer to that question, is Tywan Johnson that kind of person? Ask Susannah Doe what she thinks. Ask Susannah Doe. He is that type of person, because this is what he did."

Finally, Johnson cites as misconduct the prosecutor's statement in rebuttal argument: "I'm going to end by saying the exact same thing I told you from the very beginning. The Defendant cannot control his impulses. He cannot control his behavior. When put in a situation where someone challenges him, where someone actually, God forbid, says, 'No, you can't do what it is that you came here to do,' he reacts. He reacts, plain and simple. We saw it with our own two eyes. No, you can't have that set of DVD players. Okay. I'll threaten you with mace. I'll throw punches. No, you can't have that Red Bull. Okay. I'll throw a shelf or two at you. Susannah Doe told you what kind of person he is and what he did to her in that nightclub. That's what he did. You saw the photos. You saw the injuries. And [Jane] Doe told you what he did to her. First he tried to talk her out of it—to talk her into it, I should say. I'll just tell her I'm the police.

21

Maybe I'll get some free sex. She said no. He escalated and escalated and escalated until he forced himself on her."

We evaluate a prosecutor's conduct under an objective standard, and it need not be shown that the prosecutor acted in bad faith or with appreciation of the wrongfulness of his or her conduct. (*People v. Bradford, supra,* 15 Cal.4th at p. 1333.) "When a claim of misconduct is based on the prosecutor's comments before the jury, ' "the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." ' [Citations.]" (*People v. Friend* (2009) 47 Cal.4th 1, 29.) "In conducting this inquiry, we 'do not lightly infer' that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements. [Citation.]" (*People v. Frye* (1998) 18 Cal.4th 894, 970, disapproved on a different ground by *People v. Doolin* (2009) 45 Cal.4th 390, 421 & fn. 22.)

We cannot read the statements as Johnson urges. The references to Susannah Doe's testimony were again made in direct reference to the sexual assault charges involving Jane Doe. Rather than a general attack on Johnson's character, the comments emphasized that Johnson's *behavior*, in his resort to violence, was consistent in all of the charged offenses. Such comments on the evidence are not misconduct.

The jury was instructed to consider each charge separately (CALCRIM No. 3515). As noted *ante*, the instruction given on consideration of the prior sex offense evidence specifically directed its consideration to the current forcible rape and forcible oral copulation charges, and was given immediately following the instructions on the elements of rape and forcible oral copulation. The jury was also instructed to follow the court's instructions on the law if they conflicted with any statements made by counsel (CALCRIM No. 200). "[T]he 'court's instructions, not the prosecution's argument, are determinative, for "[w]e presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade." ' [Citation.]" (*People v. Mendoza* (2000) 24 Cal.4th 130, 173.)

22

Taken in context, and in light of the instructions properly given, we find no reasonable likelihood that the jury would have understood the prosecutor's remarks in the fashion Johnson suggests and we find no misconduct.

E.    *Ineffective Assistance of Counsel*

Johnson suggests that his trial counsel was ineffective to the extent that Johnson's instructional arguments have been forfeited due to trial counsel's failure to affirmatively request additional modifications to the court's instructions, or that Johnson's claims of misconduct are not cognizable due to trial counsel's failure to object.

To establish an ineffective assistance claim, a defendant must establish both that counsel's representation fell below an objective standard of reasonableness and that it is reasonably probable that, but for counsel's error, the result of the proceeding would have been different.  (*Strickland v. Washington* (1984) 466 U.S. 668, 686–688, 694–695; *People v. Benavides, supra,* 35 Cal.4th at pp. 92–93; *People v. Ledesma* (1987) 43 Cal.3d 171, 215–218.)  As the claim fails on an insufficient showing of either element, a court need not decide the issue of counsel's alleged deficiencies before deciding if prejudice occurred.  (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

Having rejected his claims of instructional error and prosecutorial misconduct, Johnson fails to show prejudice and his claims of ineffective assistance of counsel necessarily fail.

F.    *Cumulative Error*

Johnson argues that the "combined errors" including erroneous admission of evidence, the court's instructions to the jury, and the prosecution's arguments, require reversal.  Having found no error on any of these points, there can be no cumulative error.

### III.    DISPOSITION

The judgment is affirmed.

                                            _____

                                            BRUINIERS, J.

WE CONCUR:

_____

JONES, P. J.

_____

NEEDHAM, J.